The **STATE** of Ohio, Appellant,

v.

**HILL**, Appellee.

[Cite as *State v. Hill* (1998), 127 Ohio App.3d 265.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970271.

Decided April 17, 1998.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Steven Rakow,* Assistant Prosecuting Attorney, for appellant.

*David Clodfelter,* for appellee.

---

*Per Curiam.*

The state of Ohio appeals from the judgment of the trial court granting the motion to suppress filed by the defendant-appellee, Nathan Hill, in a prosecution for possession of drugs. We reverse that decision and remand for further proceedings in accordance with this decision.

## I.   Factual Background

Because the sequence of events in this case is important to its proper disposition, we set forth the facts in some detail. On December 6, 1996, Officers Calvin Mathis and Matt Woodard were on special detail, patrolling Cincinnati Metropolitan Housing Authority ("CMHA") property. The detail included enforcement of CMHA's trespassing policy and was undertaken in a high-crime, high-drug-trafficking area. Mathis was driving a marked police vehicle, and Woodard was the only other passenger in the car.

Mathis and Woodard spotted Hill walking alone behind an apartment building. They cruised up and down the street several times, and each time they got near Hill, he ducked in behind the apartment building, out of the sight of the officers. Mathis and Woodard stated that they suspected that Hill was not a resident of the complex, and they decided to question him. They drove up near Hill and inquired whether they might ask him a few questions. Hill replied, "No," and started running away from the officers. Woodard got out of the car and started running after Hill. Mathis followed closely in the car. He saw that Hill was running back to the area where the officers had first seen him.

Woodard chased Hill toward the cruiser, and Mathis pulled the car in front of Hill. When he pulled in front of Hill, he told Hill that Hill was under arrest. Woodard stated that Hill stopped running, but that just before he did, he reached into his pocket, grabbed an object, and threw it away from him.

Woodard was behind Hill when Mathis pulled the car in front of him. Woodard stated that Hill stopped running when he saw that he was cut off by the police car, and that Hill then turned to look behind him. When he saw Woodard behind him, he reached into his pocket, grabbed an object, and threw it to the ground. No more than four or five feet separated Hill from either officer at that point.

Woodard and Mathis placed handcuffs on Hill, and Woodard then walked over to where Hill had thrown the object and retrieved a crumpled one-dollar bill. In the folds of the bill Woodard found a substance he recognized as crack cocaine. Hill was charged with possession of drugs.

Hill moved the court to suppress the evidence of the drugs. At the hearing on the motion to suppress, Hill argued that he had been seized, for purposes of Fourth Amendment analysis, when the officers began chasing him, and that he threw away the dollar bill only after the unlawful seizure. The state argued that he was not seized until he was physically restrained by Mathis and that Hill abandoned the property prior to being physically restrained.

The trial court granted the motion to suppress, indicating that Hill had been seized at the point when the officers began chasing him. According to the court, a reasonable person would not have felt free to go about his business with one officer running on foot behind him and another chasing him in a car.

## II. Standard of Review

A trial court, in reviewing a motion to suppress, is the sole trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.[1] If the factual findings of the trial court are supported by competent, credible evidence, a reviewing court must give deference to those findings.[2] Questions of law, however, may be independently decided by this court without deference to the trial court's decision.[3]

In *Xenia v. Wallace,*[4] the Ohio Supreme Court stated that "once a warrantless search is established, the burden of persuasion is on the state to show the validity of the search." Since it is undisputed that no warrant existed in

---

1. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172, 1174; *State v. Clay* (1973), 34 Ohio St.2d 250, 251, 63 O.O.2d 391, 391–392, 298 N.E.2d 137, 138.

2. *Curry, supra*; *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60.

3. *Curry, supra,* at 93, 641 N.E.2d at 1172.

4. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 218, 524 N.E.2d 889, 891.

this case, the burden was therefore on the state to show the validity of the search by establishing the existence of one of the exceptions to the warrant requirement.

### III. Analysis

Rather than attempting to establish that the seizure was justified by one of the exceptions, the prosecution argued that Hill had no standing to challenge the validity of the search of the dollar bill because he had voluntarily abandoned that property, and therefore had no privacy interest in it, before any seizure took place, so that the police did not need to show that the seizure that occurred was reasonable in order for the evidence of the drugs to be admissible. As the prosecution argued, a defendant has no standing to challenge the admissibility of property that he or she has voluntarily abandoned.[5] The trial court must consider all of the relevant facts and circumstances to determine whether the property was voluntarily abandoned, including the conduct of the officers who seized the property.[6] An abandonment of property prompted by unlawful police conduct has been held involuntary, although police pursuit by itself does not make an abandonment involuntary.[7] Involuntarily abandoning property does not preclude a defendant from challenging its admissibility.[8]

Here, the state claimed that Hill voluntarily abandoned the property before he was seized for purposes of Fourth Amendment analysis, and that, therefore, the evidence was not obtained as a result of unlawful police conduct. Hill claimed (a) that he was seized for Fourth Amendment purposes when the officers began chasing him, (b) that this seizure was unlawful, and (c) that the unlawful police conduct caused the involuntary abandonment. The trial court apparently agreed and granted Hill's motion to suppress.

On appeal, Hill continues to argue that he was seized at the moment the officers began chasing him, since a reasonable person would not have felt free to go about his business while being pursued by a patrol car and an officer on foot.[9]

---

**5.** *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, paragraphs one and two of the syllabus; *State v. Bailey* (1991), 77 Ohio App.3d 742, 744, 603 N.E.2d 1041, 1042, citing *Abel v. United States* (1960), 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668.

**6.** *Id.*

**7.** *State v. Taub*, 47 Ohio App.3d 5, 6–7, 547 N.E.2d 360, 362, citing *United States v. Maryland* (C.A.5, 1973), 479 F.2d 566.

**8.** *Id.*

**9.** See *United States v. Mendenhall* (1980), 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (person is seized within meaning of Fourth Amendment only if a reasonable person would not have felt free to leave).

The trial court also indicated its conclusion that a reasonable person would not have felt free to go about his business under such circumstances. However, the United States Supreme Court in *California v. Hodari D.*[10] clearly held that a showing that an officer's conduct caused a person to feel that he was not free to go about his business is not enough to establish that the person has been seized. It is a necessary consideration, but not a dispositive element in determining whether a person has been seized.[11]

*Hodari D.*, like the case here, involved police pursuit of an individual who discarded an item from his person. In *Hodari D.*, the suspect threw away the contraband before being tackled by the police. Hodari claimed that he had been seized at the moment the police started chasing him, and that since the state had conceded that there was no reasonable suspicion to justify the seizure, the abandonment was the product of unlawful police conduct.[12]

The Supreme Court rejected that claim, stating that a seizure of a person does not occur unless the person asserting the authority for the stop applies physical force, however slight, to make the stop, or unless the person being stopped complies or submits to the show of authority.[13] This court has previously held that either physical contact or submission to authority is necessary to effect a seizure of a person.[14]

Hill began to run from the police when they asked him to talk to them, and the police chased him, blocked his path, and finally arrested him. The trial court erred as a matter of law when it held that Hill was seized when the police first began to chase him, since there was no physical contact, and Hill, in running away, cannot be said to have submitted to the officers' show of authority. The seizure did not occur until sometime later.

The state argues that the seizure did not occur until Woodard physically restrained Hill, and that the property had, by that point, been abandoned. However, *Hodari D.* holds that *either* physical force *or* the submission to an assertion of authority constitutes a seizure. There was evidence presented to the trial court that Mathis pulled his car in front of Hill to stop him from fleeing, that

---

10. *California v. Hodari D.* (1991), 499 U.S. 621, 626, 111 S.Ct. 1547, 1550–1551, 113 L.Ed.2d 690, 697.

11. *Id.*, at 628, 111 S.Ct. at 1551, 113 L.Ed.2d at 698–699.

12. *Id.*, at 622–624, 111 S.Ct. at 1549, 113 L.Ed.2d at 695–696.

13. *Id.*

14. See *State v. Franklin* (1993), 86 Ohio App.3d 101, 105, 619 N.E.2d 1182, 1185; *State v. Raines* (Dec. 12, 1996), Hamilton App. No. C–970014, unreported.

he told Hill at that time that he was under arrest, and that Hill in fact stopped at that point. Therefore, the evidence would support a finding that Hill submitted to the show of authority and was thereby seized before or concurrent with the abandonment of the contraband.

## IV. Disposition

The trial court, of course, did not reach these issues because the court found that the seizure began at the time the officers began chasing Hill. Because we hold that the court's determination is contrary to law, we reverse its ruling on the motion to suppress.

On appeal, the state's only assignment of error is that the trial court erred in holding that appellant abandoned the property only after he was seized. The seizure, the state argues, did not occur until Woodard and Mathis physically restrained Hill. This proposition does not square completely with the law according to *Hodari D.*, since there is evidence here to show that Hill might have been seized by submitting to the authority of the officers prior to the physical restraint. The evidence on this point, not to mention case law after *Hodari D.*, is unclear.[15] Mathis testified that Hill stopped when Mathis pulled the car in front of him, but also stated that Hill threw the item away before he stopped. Woodard testified that Hill had stopped fleeing upon being blocked by Mathis, that he turned his head and saw Woodard, and that only then did he throw away the dollar bill. The transcript of the hearing on the motion to suppress shows that the court believed that the arrest and the abandonment of the property occurred concurrently.

The trial court erred in holding that Hill was seized at the moment the officers began chasing him. Because of its erroneous ruling, the trial court did not make an appropriate factual finding regarding the point at which Hill was seized *after*

---

**15.** See, *e.g., United States v. Aldridge* (Mar. 12, 1997), C.A.6 No. 95–6692, unreported, 1997 WL 112418 (defendant who was in his car and attempting to leave the scene was seized when "he was actually confronted and ordered to stop" by an officer); *Sharrar v. Felsing* (C.A.3, 1997), 128 F.3d 810 (S.W.A.T. team surrounded house and ordered occupants to come out, which they did; seizure took place while defendants were still inside the house); *Fontenot v. Cormier* (C.A.5, 1995), 56 F.3d 669 (police, with guns drawn, ordered woman to permit entry into her house; she was seized at that point because she did not physically resist or flee); *United States v. Solis* (C.A.7, 1997), 108 F.3d 684 (defendant in hotel room was seized when he opened his door in response to knocks by police); *State v. Henry* (Dec. 10, 1992), Cuyahoga App. No. 63536, unreported, 1992 WL 369916 (inaction by defendant when police drove onto sidewalk and exited from car was submission to authority); *State v. Raines, supra* (defendant fled from officer who shouted to defendant that he was under arrest; however, defendant was not actually seized or arrested until the officer caught up with him and physically restrained him); *State v. Darst* (May 17, 1996), Athens App. No. 95CA1671, unreported, 1996 WL 277620 (although trooper formed intent to stop defendant long before he put on his flashers and siren, defendant was not seized until she pulled her car over to the side of the road and stopped).

the police began chasing him or whether the seizure was, at that time, unreasonable. Since the trial court is the trier of fact and is in the best position to judge credibility and resolve any conflicts in the evidence, we remand the case for further proceedings on the motion to suppress in accordance with this decision.

*Judgment reversed*
*and cause remanded.*

HILDEBRANDT, P.J., MARIANNA BROWN BETTMAN and PAINTER, JJ., concur.