[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
Defendant-appellant, Anthony Watson and his co-defendant, Stacey McBride, were both charged with the aggravated robbery of Darwin Frierson. After a jury trial, Watson was found guilty of aggravated robbery, in violation of R.C. 2911.01(A)(1), and robbery, in violation of R.C. 2911.02(A)(2). Watson was also found guilty of two gun specifications. The trial court sentenced Watson to ten years' incarceration for aggravated robbery, and to three years' incarceration on the second gun specification.[1] Furthermore, after finding Watson to be a repeat violent offender, the trial court imposed an additional five years' incarceration and ordered all the terms to run consecutively.
Watson raises seven assignments of error: (1) that the trial court erred by failing to grant his motion for relief from prejudicial joinder; (2) that the trial court erred by denying his motion to suppress evidence recovered from an automobile search; (3) that the trial court erred by allowing the state to dismiss two black jurors; (4) that the trial court erred by not allowing a certain report into evidence; (5) that his conviction was based upon insufficient evidence; (6) that his conviction was contrary to the manifest weight of the evidence; and (7) that the trial court erred by sentencing him to an additional term of incarceration for the repeat-violent-offender specification.
In his first assignment of error, Watson argues that the trial court erred in denying his motion for relief from prejudicial joinder. He claims that he should have been tried separately from McBride so that he could call McBride as a witness.
The joinder of defendants to avoid multiple trials is favored in the law.[2] Joinder is the rule rather than the exception, and relief from joinder is within the sound discretion of the trial court.[3] Further, a defendant asserting that joinder is improper must make an affirmative showing that his rights will be prejudiced if a separate trial is not granted.[4]Watson argues that he sought to use McBride's testimony to show that he was not with McBride at the time of the robbery, and that the two had not seen each other until hours later. But Watson failed to demonstrate below that he would be prejudiced as a result of the joinder. The court's refusal to grant separate trials did not prevent Watson from presenting an alibi defense. In fact, his girlfriend testified that Watson was with her at the time of the robbery.
Furthermore, there was no guarantee that McBride would testify at Watson's trial, because McBride might have asserted his Fifth Amendment right against self-incrimination.[5] Neither Watson nor McBride testified at their joint trial. And McBride did not present a defense that was antagonistic to Watson's defense. Rather, each man maintained that he had nothing to do with the robbery, and each presented an alibi defense that attempted to exculpate himself, but not to inculpate his co-defendant.[6] Moreover, the trial court gave the proper instructions relating to multiple defendants and informed the jury that it had to decide separately the guilt or innocence of each of the defendants.[7]
Accordingly, we find no abuse of discretion in the trial court's refusal to grant separate trials.[8] Watson's first assignment of error is overruled.
In his second assignment of error, Watson contends that the trial court erred in denying his motion to suppress the search of the vehicle he had been driving. Watson argues that Officer Christopher Vogelpohl's testimony regarding Watson's consent to search the vehicle contradicted the officer's previous testimony and, therefore, was not credible. While Watson maintained below that he had never given consent to search the vehicle, a second police officer, Susan Butler, testified that she was present when Watson gave his consent to Officer Vogelpohl.
At a suppression hearing, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility.[9] A reviewing court is bound to accept those findings of fact that are supported by competent, credible evidence.[10] But, without deference to the trial court's conclusion, the reviewing court must determine whether, as a matter of law, the facts satisfy the appropriate legal standard.[11] In this case, the trial court stated that it found Officer Butler's testimony to be truthful and gave numerous reasons for its determination that Watson's testimony was not credible. Because the trial court's finding that Watson's consent was voluntary is supported by competent, credible evidence,[12] we overrule Watson's second assignment of error.
In his third assignment of error, Watson asserts the state's use of peremptory challenges to remove two prospective African-American jurors was racially motivated. To establish a prima facie case of racial discrimination in the selection of a jury, the defendant must establish that members of a racially cognizable racial group have been peremptorily challenged and that the facts raise an inference that the prosecutor has used the peremptory challenges to exclude jurors on account of their race.[13] If the defendant makes a prima facie case of discrimination, the state must then provide a race-neutral explanation for its use of the challenges.[14]
In the case at bar, we assume, without deciding, that Watson established a prima facie case of discrimination. The prosecutor, however, explained the use of the peremptory challenge for the first juror by citing the juror's statement that she had a problem with a police officer, as well as her poor body language when the prosecutor inquired whether she could be fair and impartial when considering the testimony of numerous police officers. As to the second prospective juror, the prosecutor expressed his concern that, with only a ninth-grade education, the juror might not fully appreciate the testimony of an expert witness, as well as the juror's poor body language and demeanor indicating that she was bored with, or indifferent to, the proceedings.
Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered should be deemed race-neutral.[15] The prosecutor's explanations here were facially valid, race-neutral justifications for the use of the peremptory challenges.[16]
Therefore, we cannot say that the trial court's finding of no discriminatory intent was clearly erroneous, and the third assignment of error is therefore overruled.
In his fourth assignment of error, Watson claims that the trial court erred by not admitting into evidence an "Eyewitness Evidence and Guide for Law Enforcement" published by the United States Department of Justice. Watson's expert witness testified that the guide had been compiled by a panel of thirty-four researchers. It is clear from the record that the guide was hearsay, in that it was an out-of-court statement offered by Watson for its truth. Furthermore, Watson failed to demonstrate a foundation for any hearsay exception that would have allowed the guide to be admitted into evidence. Therefore, finding no error in the trial court's exclusion of the guide, we overrule Watson's fourth assignment of error.
In his fifth and sixth assignments of error, Watson argues that his conviction for aggravated robbery was based upon insufficient evidence and was against the manifest weight of the evidence.[17] In the review of the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[18] To reverse a trial court's decision on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[19]
R.C. 2911.01(A)(1), which defines aggravated robbery, provides that "[n]o person, in attempting or committing a theft offense * * *, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
In the case at bar, there was no insufficiency in the state's proof. The state produced evidence that two men had approached Frierson, drawn their guns on him and taken his wallet, a gold chain, and a leather coat. Frierson later identified Watson and McBride as the men who had robbed him. Moreover, we reject Watson's claim that the conviction was against the weight of the evidence. Watson argues that a review of the testimony of the defense expert on eyewitness identification demonstrates that the jury lost its way. But, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact.[20]
Our review of this record convinces us that the jury did not lose its way and create a manifest miscarriage of justice. Accordingly, Watson's fifth and sixth assignments of error are overruled.
In his seventh assignment of error, Watson claims that the trial court erred when it sentenced him to an additional five years' incarceration for the repeat-violent-offender specification. But, R.C. 2953.08(A)(5) provides that a defendant who is sentenced for a repeat-violent-offender specification may only appeal his sentence as a matter of right where it consists of an additional prison term of ten years. Because Watson did not receive the maximum term of ten years for the specification, he has no right to appeal that aspect of his sentence. Watson's seventh assignment of error is overruled.
Therefore, the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman, P.J., Winkler and Shannon, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
[1] For sentencing purposes, the robbery count merged with the aggravated-robbery count, and the first gun specification merged with the second gun specification.
[2] See State v. Thomas (1980), 61 Ohio St.2d 223, 225, 400 N.E.2d 401,404.
[3] See State v. Perod (1968), 15 Ohio App.2d 115, 239 N.E.2d 100;State v. Abbott (1949), 152 Ohio St. 228, 89 N.E.2d 147.
[4] See State v. Roberts (1980), 62 Ohio St.2d 170, 175, 405 N.E.2d 247,251; State v. Scheibel (1990), 55 Ohio St.3d 71, 89, 564 N.E.2d 54,73.
[5] See State v. Byrd (Apr. 23, 1998), Cuyahoga App. No. 71789, unreported.
[6] See State v. Daniels (1993), 92 Ohio App.3d 473, 486, 636 N.E.2d 336,344; State v. Rogers (June 19, 1998), Hamilton App. No. C-970190, unreported, discretionary appeal not allowed (1998), 83 Ohio St.3d 1449,700 N.E.2d 332.
[7] See State v. Thompson (1998), 127 Ohio App.3d 511, 524-525;713 N.E.2d 456, 465.
[8] See, e.g., State v. Garrett (May 1, 1998), Hamilton App. No. C-960284, unreported; State v. Badgett (June 26, 1996), Hamilton App. No. C-950332, unreported, discretionary appeal not allowed (1996),77 Ohio St.3d 1474, 673 N.E.2d 138.
[9] See State v. Clay (1973), 34 Ohio St.2d 250, 298 N.E.2d 137; Statev. Hill (1998), 127 Ohio App.3d 265, 268, 712 N.E.2d 791, 793.
[10] See State v. Scheibel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54,60.
[11] See State v. Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172,1174.
[12] See Schneckloth v. Bustamonte (1973), 412 U.S. 218,93 S.Ct. 2041; State v. Childress (1983), 4 Ohio St.3d 217, 448 N.E.2d 115, at syllabus.
[13] See Batson v. Kentucky (1980), 476 U.S. 79, 96,106 S.Ct. 1712, 1723.
[14] Id.; State v. Hill (1995), 73 Ohio St.3d 433, 445, 653 N.E.2d 271,282.
[15] See State v. Diaz (Dec. 8, 2000), Hamilton App. No. C-980186, unreported, discretionary appeal not allowed (2001), 91 Ohio St.3d 1482,744 N.E.2d 1995, citing Purkett v. Elem (1995), 514 U.S. 765, 767-768,115 S.Ct. 1769, 1777.
[16] See State v. Hairston (1990), 67 Ohio App.3d 341, 346,586 N.E.2d 1200, 1203 (poor body language and hesitancy in responding to state's questions were permissible race-neutral explanations).
[17] Watson's argument also embraces the charge of robbery, but he was not convicted of that offense.
[18] State v. Waddy (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819,825.
[19] State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541,546.
[20] State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.