OPINION
{¶ 1} Defendant, Mark Joseph Mathews, appeals from his conviction for illegally manufacturing drugs, R.C 2925.04(A), which was entered on Defendant's plea of no contest after the trial court overruled his motion to suppress evidence. The State dismissed a companion charge, possession of criminal tools, R.C. 2923.24(A), as a part of the bargain that procured Defendant's no contest plea.
{¶ 2} Mathews filed a timely notice of appeal. He presents a single assignment of error, which states:
{¶ 3} "THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE SUPPRESSION MOTION BECAUSE THE STATE FAILED TO PROVE THAT THE POLICE OFFICER HAD PROBABLE CAUSE TO BELIEVE THAT THE DRIVER HAD COMMITTED A TRAFFIC OFFENSE."
{¶ 4} The evidence that Defendant Mathews sought to suppress was seized from a vehicle he'd been driving after he was stopped by Vandalia Police Officer Scott Breisch on I-75, north of Dayton. Officer Breisch testified at the suppression hearing that he stopped Mathews for a "marked lanes" violation, R.C. 4511.33(A), after he saw the passenger-side tires of his vehicle cross the white edge line on I-75 two or three times, by about one tire's width.
{¶ 5} Before deciding to stop Defendant's vehicle, Officer Breisch learned from a computer check that it was registered to a female, Jamie Mathews. He also learned of an alert that a male in the vehicle could be the subject of outstanding arrest warrants. Officer Breisch also testified that while he followed the vehicle for a distance of about three miles, Defendant "seemed to be watching me more that he was driving the car," which the officer believed was "exceptional" and not "natural." (T. 6.)
{¶ 6} Officer Breisch brought Defendant's vehicle to a stop by activating the emergency lights on his cruiser. As the officer walked toward the vehicle, which was parked on the roadside, Defendant emerged and fled on foot across I-75.
{¶ 7} Officer Breisch decided to call for assistance instead of pursuing the Defendant himself. When he then approached the vehicle, Officer Breisch saw two pitchers of liquid on the front passenger floor. They were from one-half to three quarters full. When he opened the door Officer Breisch was immediately overcome by a strong chemical odor, which he described as "very, very strong." (T. 11). Believing that the vehicle was a mobile methamphetamine laboratory, Officer Breisch notified his superiors. Fire Department and DEA officers were called to the scene, and the vehicle was towed.
{¶ 8} Officer Breisch subsequently identified Defendant from photographs he was shown by a DEA agent. Defendant was arrested and charged by indictment with illegally manufacturing drugs and possession of criminal tools.
{¶ 9} The trial court overruled Defendant's motion to suppress the evidence seized from the automobile he'd been driving when he was stopped. The court found that Defendant was not seized when his vehicle was stopped, even though the officer had probable cause to stop it, and in any event Defendant lacked standing to challenge the subsequent search of the car because he voluntarily abandoned it.
{¶ 10} On appeal, Defendant argues that the trial court erred when it found that the officer had probable cause to stop him, and when it also found that he was not seized. Defendant contends that he was seized, illegally, because the officer lacked probable cause to stop him, and that as a result he cannot be deemed to have voluntarily abandoned the vehicle and its contents.
{¶ 11} We agree that Defendant was seized for Fourth Amendment purposes when his vehicle was stopped. "The test for determining whether a person has been `seized,' which triggers the protections of the Fourth Amendment, is whether, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. United States v. Mendenhall (1980), 446 U.S. 544, 100 S.Ct. 1870,64 L.Ed.2d 497. That generally occurs when the police officer has byeither physical force or show of authority restrained the person'sliberty, so that a reasonable person would not feel free to decline theofficer's requests or otherwise terminate the encounter. Id." State v.Gonsior (1996), 117 Ohio App.3d 481, 485. Those requirements weresatisfied when Defendant pulled his car to a stop on the side of I-75 inresponse to Officer Breisch's illumination of the emergency lights on hiscruiser. The further question is whether the stop violated theprohibitions of the Fourth Amendment.
 {¶ 12} An officer who witnesses a violation of the traffic codehas probable cause to stop the vehicle he sees in order to cite thedriver for the violation. Then, any evidence of other criminal violationsthe officer reasonably discovers while exercising that authority is notthe product of an illegal search. It may be seized, and it is not subjectto suppression. Whren v. United States (1996), 517 U.S. 806,___ L.Ed.2d ___, 116 S.Ct. 1769; Dayton v. Erickson, 76 Ohio St.3d 3, 1996-Ohio-431.
 {¶ 13} Defendant argues that the several cross-overs of the sidelane line that Officer Breisch witnessed was insufficient to constituteprobable cause of a "marked lanes" violation. R.C. 4511.33 requires avehicle to "be driven, as nearly as practicable, entirely within a singlelane . . ." These were de minimus lapses, according to Defendant, thatdid not rise to the level of probable cause.
 {¶ 14} We need not determine whether the stop and the seizure ofevidence that followed was justified under the Whren and Ericksonprobable cause requirement. Before he stopped the vehicle, OfficerBreisch had information that it was registered to a female, but he sawthat a male was driving it. More significantly, the officer also hadinformation that arrest warrants were outstanding for a male that mightbe inside. These matters constitute sufficient reasonable and articulablesuspicion to permit the officer to stop the vehicle in order toinvestigate whether warrants for the driver were outstanding. Terry v.Ohio (1967), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The fact that theofficer did not expressly rely on that particular suspicion or on Terryto justify the stop is not dispositive of the question of its legalitywhen the facts supporting a Terry stop are hypothesized by the record.
{¶ 15} Terry authorizes a cursory search for weapons when theirpresence is reasonably suspected. It does not authorize a search forcontraband, however, and that's what Officer Breisch did when he openedthe door of the vehicle to investigate the pitchers of liquid he sawinside. His act was a warrantless search, which is per se illegal unlessjustified by a recognized exception to the Fourth Amendment warrantrequirement. Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507,19 L.Ed.2d 576.
 {¶ 16} The search was not justified by the "plain view"exception, because the criminal nature of the pitchers and their contentswere not immediately apparent. United States v. Ross (1982), 456 U.S. 798,102 S.Ct. 2157, 72 L.Ed.2d 572. Neither was it authorized by the"automobile exception" recognized in Coolidge v. New Hampshire (1971),403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. Again, the officer lackedprobable cause to believe that the pitchers were criminal in character.Further, because the car was parked and had been abandoned, theexigencies relating to its possible movement were absent. Id.
{¶ 17} The trial court found that the prohibitions of the FourthAmendment nevertheless did not apply to the officer's act of opening thevehicle's door because Defendant had abandoned it, thereby waiving anyexpectation of privacy he had in the vehicle and its contents. An accusedlacks standing to challenge the admissibility of property he hasvoluntarily abandoned. State v. Freeman (1980), 64 Ohio St.2d 291.Defendant, relying on State v. Hill (1998), 127 Ohio App.3d 265, argues that he is not thereby precluded from challenging admissibility of the evidence that police found in the car because his act of abandonment was not involuntary, being the result of the unlawful police conduct, which was the illegal stop of his vehicle.
{¶ 18} We reject the Defendant's contention on two accounts. First, as we pointed out, the stop of Defendant's vehicle did not violate the Fourth Amendment, and was therefore not illegal. Second, even if the stop had been illegal, Defendant's act of abandonment was nevertheless voluntary because it constituted a responsible act on his part independent of the alleged illegality.
{¶ 19} The test for voluntary abandonment is not, as Defendant argues, whether the abandonment would not have occurred "but for" the alleged illegality. The test is whether, in this instance, the abandonment was a product of the allegedly illegal stop, and it was not. Rather, it was the product of Defendant's own choice and decision to run off, leaving the unoccupied vehicle by the side of a busy interstate highway. Further, and unlike Hill, wherein no actual abandonment occurred, Defendant's act was a total and unequivocal abandonment of any reasonable expectation of privacy the law might afford him in the vehicle and its contents.
{¶ 20} The assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.