OPINION
{¶ 1} Plaintiff-appellant, the state of Ohio, appeals a decision of the Warren County Court of Common Pleas, ordering that all evidence seized from defendant-appellee, Rachel Simmons, as well as any statements made by her to law enforcement officers, be suppressed from evidence.
 {¶ 2} On May 13, 2004, Agent Kristen Scherer of the Ohio Department of Public Safety Investigation Unit obtained a search warrant for the premises known as Bristols Show Club and Revue, located in Monroe, Ohio. The search warrant authorized Agent Scherer and her fellow officers to search for evidence of illegal alcohol sales and to seize a number of items, including business records, which the warrant stated that "may be stored by means of a computerized information system."
 {¶ 3} The warrant contained a lengthy and detailed list of the computer-related items and materials to be searched, including "[a]ll computer programs, files, and data contained therein; individual computer [components], electronic organizer * * *; * * * backup tapes; * * * CD, CD-R, CD-RW, DVD, or other optical storage disks; * * * digital cameras; digital camera film; cartridges, disks, cards, and chips; * * * disk or other magnetic or optical storage players * * *; * * * flash cards; floppy disks; floppy disk drives; * * * hard disk cards; hard disk drives; * * * digitizing tablets * * *; * * * media storage containers * * *; * * * PCMCIA cards; * * * removable backup media; * * * ZIP and compatible disks; ZIP and compatible drives; all other forms of electronic, magnetic, or optical storage media; and other system components and peripherals necessary to allow such computer system to operate, as well as all passwords and system and software manuals."
 {¶ 4} Upon obtaining the warrant, Agent Scherer and approximately six other law enforcement officers entered Bristols and announced that they had a search warrant. The officers asked the occupants to "please stay where you're at." They then ordered Bristols' employees, including its dancers/strippers, to go to the stage and place their hands on the table located there. After making sure that everyone in the premises was accounted for, the officers escorted the dancers/strippers, two or three at a time, to the back room to give them an opportunity to put on extra clothing.
 {¶ 5} When they were in the back room, Agent Scherer told the dancers/strippers, including appellee, to put on or take with them, anything they desired because, afterwards, they were going to go back in front "to answer any questions * * * that any of the other investigators might have[.]" Agent Scherer explained to the dancers/strippers that they could leave any of their things behind, but if they wanted to take their things with them, they would be "looked through for any type of contraband or weapons[.]" At that time, appellee handed Agent Scherer her purse.
 {¶ 6} Agent Scherer searched appellee's purse and found a bottle containing pills. When Agent Scherer asked appellee what the pills were, appellee told her that they were morphine and that her mother-in-law had given them to her "for the relief of kidney stones."
 {¶ 7} On June 14, 2004, appellee was indicted by the Warren County Grand Jury on one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a felony of the fifth degree. Appellee pled not guilty to the charge and later moved to suppress any evidence gathered by law enforcement officers as a result of the search of her person or personal effects, as well as any incriminating statement she allegedly may have made to the officers.
 {¶ 8} After holding a hearing on the matter, the trial court[1] issued a decision and entry granting appellee's motion to suppress the evidence seized from her, along with any statements she allegedly made, on the grounds that the officers who executed the search warrant "exceeded the scope of the warrant and were not acting in objectively reasonable reliance on it when [appellee] was advised that her purse would be searched."
 {¶ 9} The trial court rejected appellant's argument that the search warrant authorized officers to search the purses of appellee and the other dancers/strippers at Bristols since the items the warrant authorized them to search for, e.g. small, computer components and storage devices, might have been stored therein. The trial court found that "[t]o follow this position to its logical conclusion the state would have to advocate that a complete search of all clothing, wallets, hats, shoes, bras, underpants, male or female, etc., of all employees, including [body] cavity searches, would be justified under the warrant."
 {¶ 10} The trial court also rejected appellant's argument that the search of appellee's purse was justified by "officer safety" concerns, noting that "[t]here was no mention of violent activity or weapons ever being seen" and that there was "total compliance by all employees and patrons with the directives of the officers" who executed the warrant. Furthermore, the trial court disagreed with appellant's argument that appellee had consented to a search of her purse, finding that appellee "was only given the option of when [the purse] would be searched." The trial court also rejected appellant's argument that the law enforcement officers were permitted to seize the pills under the plain view doctrine, ruling that "[t]here can be no `plain view' because the initial lawful intrusion was onto the premises, not in her purse."
 {¶ 11} Appellant now appeals the trial court's decision, raising the following as its sole assignment of error:
 {¶ 12} "THE TRIAL COURT CORRECTLY CONCLUDED THAT THE AGENT WAS NOT JUSTIFIED BY THE SEARCH WARRANT AND OFFICER SAFETY CONCERNS IN SEARCHING THE DEFENDANT'S PURSE."
 {¶ 13} Appellant argues that the trial court erred in granting appellee's motion to suppress the evidence seized from her purse and any statements that she allegedly made to law enforcement officers. In furtherance of this argument, appellant points out that the search warrant authorized Agent Scherer and her fellow officers to search for evidence of illegal alcohol sales, and that the warrant specifically stated that such evidence might be stored on computer components, like disks and flash memory, which "could easily have been stored in [appellee's] purse." Therefore, appellant argues, the search warrant authorized the officers to search appellee's purse to see if it contained any of the items specified in the warrant.
 {¶ 14} Appellant then asserts that once Agent Scherer searched the purse, the bottle of morphine pills "came into plain view," and that the incriminating nature of the pills became "immediately apparent" when Agent Scherer discovered that the pills did not belong to appellee but had been given to her by her mother-in-law. Consequently, appellant argues, the officers were permitted to seize the bottle of morphine pills under the plain view doctrine, and, thus, the seizure of the morphine was proper. Appellant also argues that appellee's statements to Agent Scherer should not have been suppressed because the statements were obtained as a result of legitimate "investigative questioning" and appellee made the statements voluntarily. We agree with appellant's argument.
 {¶ 15} A trial court, when considering a motion to suppress, "is the sole trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses."State v. Hill (1998), 127 Ohio App.3d 265, 268. If the trial court's factual findings are supported by competent, credible evidence, a reviewing court such as this one must give deference to those findings. Id. However, questions of law may be independently decided by the reviewing court without deference to the trial court's decision. Id. See, also, Ornelas v. UnitedStates (1996), 517 U.S. 690, 699, 116 S.Ct. 1657 (holding that "as a general matter" determinations of reasonable suspicion and probable cause should be reviewed de novo by an appellate court, but findings of historical fact should be reviewed only for "clear error," giving "due weight to inferences drawn from those facts by resident judges and local law enforcement officers").
 {¶ 16} The permissible scope of a search is governed by the terms set forth in the search warrant. See Horton v. California
(1990), 496 U.S. 128, 140, 110 S.Ct. 2301. "If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." Id. The United States Supreme Court has stated:
 {¶ 17} "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. [Footnote omitted.] Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." United States v. Ross (1982), 456 U.S. 798, 820-821,102 S.Ct. 2157. See, also, State v. Parsons (1990),68 Ohio App.3d 323, 330, citing Ross (since scope of the search included "weapons used in the offense" and chemicals that could be used as accelerants in making a fire bomb, officers had "wide latitude within the scope of the search to open closets, chests, drawers and containers where these items might be found").
 {¶ 18} "If a warrant sufficiently describes the premises to be searched, this will justify a search of those personal effects found therein [footnote omitted] and belonging to the person occupying the premises if those effects might contain the described items. It is not necessary, in order to comply with the Fourth Amendment requirement that the place to be searched be described with particularity, that the warrant also describe such receptacles. For example, if officers executing a warrant for marijuana find in the described house a matchbox and wallet, these items may be searched because they are `plausible repositories' for the marijuana." 2 LaFave, Search and Seizure (2004) 742-743, Section 4.10(b), citing State v. Davenport
(1973), 55 Haw. 90, 516 P.2d 65, and United States v.Martinez-Zayas (C.A.3, 1988), 857 F.2d 122, among others.
 {¶ 19} In this case, the search warrant authorized Agent Scherer and her fellow officers to search for evidence of liquor law violations. The warrant specifically stated that such evidence might be stored on a broad range of computer components that could have easily fit within a purse. Because the items might have been stored in the purses of the dancers/strippers at Bristols, Agent Scherer and her fellow officers were entitled to search those purses for the items listed in the warrant. SeeRoss, 456 U.S. at 820-821, and Parsons,68 Ohio App.3d at 330. The trial court erred in finding otherwise.
 {¶ 20} Next, appellant argues that the seizure of the pills in the purse was permissible under the plain view doctrine. The plain view doctrine allows police officers to seize evidence, instrumentalities, or fruits of a crime without first obtaining a search warrant specifically naming such items if (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the incriminating character of the evidence is "immediately apparent"; and (3) the officer has a lawful right of access to the object itself. Horton, 496 U.S. at 136-137.
 {¶ 21} Here, the seizure of the morphine in the purse was not permissible under the plain view exception to the warrant requirement when Agent Scherer first saw the bottle of morphine pills because the incriminating nature of the pills was not "immediately apparent." In this context, the term "immediately apparent" means that the officer must have had probable cause to believe the item was contraband. Arizona v. Hicks (1987),480 U.S. 321, 326, 107 S.Ct. 1149. In fact, appellant essentially acknowledges that Agent Scherer had to question appellee as to what was in the pill bottle before she could lawfully seize it. However, when appellee told Agent Scherer that the pills were given to her by her mother-in-law and thus did not belong to her, this gave Agent Scherer probable cause to believe that the pills were contraband and, therefore, enabled Scherer to lawfully seize the pills.
 {¶ 22} Appellee defends the trial court ruling by arguing that "[t]he present case falls squarely within the holding ofYbarra v. Illinois (1979), 444 U.S. 85, [100 S.Ct. 338]." We disagree with this contention.
 {¶ 23} The Ybarra court held that a search warrant authorizing the search of a tavern and the bartender who worked there, for "evidence of the offense of possession of a controlled substance," did not permit the police to search the tavern's patrons. Id. at 92. In support of its decision, the court stated that, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." Ybarra,444 U.S. at 91.
 {¶ 24} Ybarra stands for the proposition that police may not conduct personal searches of the patrons of a business establishment unless they can demonstrate probable cause to search each patron, since each patron of the business establishment is "clothed with constitutional protection against an unreasonable search or an unreasonable seizure." Id. Ybarra
involved a public place; nevertheless, the principle in that case has been extended to cover visitors or social guests in private dwellings. See People v. Gross, 124 Ill.App.3d 1036, 1039. Thus, in Gross, a case on which appellee relies, along withYbarra, the court held that a visitor's mere presence in a private apartment where police executed a warrant did not establish probable cause to search the visitor's purse. Id. at 1039.
 {¶ 25} Appellee's reliance on Ybarra and Gross, is misplaced. In this case, appellee was not a customer or patron of Bristols, nor was she a mere visitor there. Instead, as a worker at Bristols, she had a significantly greater relationship to the premises than that of a customer or mere visitor. Under these circumstances, appellee, unlike a patron or visitor to Bristols, had no reasonable expectation of privacy as to her purse, which she apparently stored in the back room at Bristols and left unattended. Since the purses of appellee and the other workers at Bristols might have contained the items listed in the warrant, the police were permitted to search them for those items. SeeRoss, 456 U.S. at 820-821, and Parsons,68 Ohio App.3d at 330.
 {¶ 26} Appellee argues that she and the other dancers/strippers at Bristols were not employees, but rather, independent contractors. But appellee has offered no persuasive reason for treating the independent contractors in this case differently than Bristols' other employees. Because appellee was not a customer or mere visitor at Bristols, but instead, was a worker there, it is apparent that Ybarra does not apply to this case.
 {¶ 27} As previously stated, the trial court rejected appellant's argument that the search warrant authorized Agent Scherer and her fellow officers to search appellee's purse for the items listed in the warrant because those items could have been concealed within the purse. The trial court did so on the grounds that "to follow this position to its logical conclusion," then the search warrant (and, presumably, any subsequent, similarly-worded search warrant) could be interpreted to permit the police to conduct body cavity and strip searches, since the items could have been concealed in the body cavities and clothing of Bristols' employees. However, the trial court's concerns about body cavity and strip searches were clearly unwarranted in light of the requirements of R.C. 2933.32(B).[2]
 {¶ 28} R.C. 2933(B)(1) provides that, except as authorized by the remaining provisions in R.C. 2933.32(B), no law enforcement officer, employee of a law enforcement agency, physician, registered nurse, or licensed practical nurse may conduct, or cause to be conducted, a body cavity or strip search. Pursuant to R.C. 2933.32(B)(2), a body cavity or strip search may be conducted only if a law enforcement officer or employee of a law enforcement agency "has probable cause to believe that the person is concealing evidence of the commission of a criminal offense, including fruits or tools of a crime, contraband, or a deadly weapon, as defined in [R.C. 2923.11], that could not otherwise be discovered." Additionally, a body cavity search may be conducted only after a search warrant is issued that authorizes the search, unless there is a legitimate medical reason or medical emergency justifying a warrantless search. R.C. 2933.32(B)(4). Furthermore, a body cavity search or a strip search may be conducted only after a law enforcement officer or employee of a law enforcement agency "obtains written authorization for the search from the person in command of the law enforcement agency, or from a person specifically designated by the person in command to give a written authorization for either type of search." R.C.2933.32(B)(5).
 {¶ 29} R.C. 2933.32(B) protects criminal suspects against unreasonable body cavity searches and strip searches by providing detailed procedural safeguards to govern the use of such investigative methods by law enforcement. Therefore, there was no need for the trial court in this case to ignore the well-settled rule that law enforcement officers may search for the items listed in a premises search warrant in any plausible repository or receptacle that may contain them. See 2 LaFave, Search and Seizure (2004) 742-743, Section 4.10(b), citing Davenport,55 Haw. 90, 516 P.2d 65.
 {¶ 30} Appellee argues that the statements she allegedly made to Agent Scherer should have been suppressed on the grounds that the law enforcement officers never provided her with the warnings required by Miranda v. Arizona (1966), 384 U.S. 436,86 S.Ct. 1602, prior to questioning her.
 {¶ 31} Appellee raised this same argument in the trial court proceedings regarding her motion to suppress, but the trial court never ruled on it in light of its determination that the law enforcement officers exceeded the scope of the search warrant when they searched appellee's purse. The trial court concluded that appellee's "statement must be suppressed on the basis of the illegal search."
 {¶ 32} Given our determination that the trial court erred in determining that the officers exceeded the scope of the search warrant in searching appellee's purse, it now becomes necessary to determine appellee's Miranda claim. Because this is a determination that should be made in the first instance by the trial court, we direct that the trial court rule on appellee'sMiranda claim on remand.
 {¶ 33} In light of the foregoing, we need not address appellant's remaining arguments regarding officer safety or appellee's alleged failure to comply with Crim.R. 47, since such arguments have been rendered moot. See App.R. 12(A)(1)(c).
 {¶ 34} Appellant's sole assignment of error is sustained.
 {¶ 35} The trial court's judgment is reversed and this cause is remanded for further proceedings consistent with this opinion and in accordance with the law of this state.
Powell, P.J., concurs.
Bressler, J., dissents without written opinion.
[1] The judge who presided over the proceedings on the motion to suppress was the same judge who issued the search warrant. The Ohio Supreme Court has indicated that a judge who authorizes a search warrant is not disqualified from reviewing the validity of the warrant on a motion to suppress in subsequent criminal proceedings. In re Disqualification of Basinger (1996),77 Ohio St.3d 1237.
[2] {¶ a.} R.C. 2933.32(B) states:
{¶ b.} "(1) Except as authorized by this division, no law enforcement officer, other employee of a law enforcement agency, physician, or registered nurse or licensed practical nurse shall conduct or cause to be conducted a body cavity search or a strip search.
{¶ c.} "(2) A body cavity search or strip search may be conducted if a law enforcement officer or employee of a law enforcement agency has probable cause to believe that the person is concealing evidence of the commission of a criminal offense, including fruits or tools of a crime, contraband, or a deadly weapon, as defined in Section 2923.11 of the Revised Code, that could not otherwise be discovered. In determining probable cause for purposes of this section, a law enforcement officer or employee of a law enforcement agency shall consider the nature of the offense with which the person to be searched is charged, the circumstances of the person's arrest, and, if known, the prior conviction record of the person.
{¶ d.} "(3) A body cavity search or strip search may be conducted for any legitimate medical or hygienic reason.
{¶ e.} "(4) Unless there is a legitimate medical reason or medical emergency justifying a warrantless search, a body cavity search shall be conducted only after a search warrant is issued that authorizes the search. In any case, a body cavity search shall be conducted under sanitary conditions and only by a physician, or a registered nurse or licensed practical nurse, who is registered or licensed to practice in this state.
{¶ f.} "(5) Unless there is a legitimate medical reason or medical emergency that makes obtaining written authorization impracticable, a body cavity search or strip search shall be conducted only after a law enforcement officer or employee of a law enforcement agency obtains a written authorization for the search from the person in command of the law enforcement agency, or from a person specifically designated by the person in command to give a written authorization for either type of search.
{¶ g.} "(6) A body cavity search or strip search shall be conducted by a person or persons who are of the same sex as the person who is being searched and the search shall be conducted in a manner and in a location that permits only the person or persons who are physically conducting the search and the person who is being searched to observe the search."