[Cite as *State v. Workman*, 2017-Ohio-2802.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                                            :

      Plaintiff-Appellee,                          :

      - vs -                                              :

PERRY J. WORKMAN,                            :

      Defendant-Appellant.                      :

CASE NOS.  CA2016-10-065
                  CA2016-10-066

O P I N I O N
5/15/2017

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2015CR00609

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Brian T. Goldberg, 2662 Madison Road, Cincinnati, Ohio 45208, for defendant-appellant

**PIPER, J.**

{¶ 1}  Defendant-appellant, Perry Workman, appeals his convictions in the Clermont County Court of Common Pleas after pleading no contest to trafficking in drugs within the vicinity of a juvenile and corrupting another with drugs.

{¶ 2}  Union Township police began to investigate Workman's stepson on suspicion of participating in a 24-hour crime spree that included breaking and entering, criminal damaging, obstruction, and pandering obscenity to a juvenile.  The stepson lived in

Workman's home, and police executed a search warrant there looking for items associated with the stepson's alleged crimes, including clothing, cellphones, and cigarette packages. During the search, police located drugs throughout the house, including marijuana and pills in the bedroom Workman shared with his wife, Amanda Lilly.

{¶ 3} Workman was indicted for trafficking in drugs, corrupting another with drugs, and two counts of possession of drugs. Workman moved to suppress the evidence, claiming that the police's search exceeded the scope of the search warrant. The trial court held a hearing on the matter, and denied Workman's motion to suppress. Workman then agreed to plead no contest to the trafficking and corrupting charges, and the two possession charges were dismissed. The trial court accepted Workman's pleas as validly made, and sentenced Workman to five years on the trafficking charge, and one year on the corrupting charge. The trial court ordered the sentences to be served consecutively, for an aggregate prison term of six years. Workman now appeals his convictions and sentence, raising the following assignments of error.

{¶ 4} Assignment of Error No. 1:

{¶ 5} THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. WORKMAN IN DENYING HIS MOTION TO SUPPRESS.

{¶ 6} Workman argues in his first assignment of error that this motion to suppress should have been granted because officers exceeded the scope of the warrant when searching his bedroom.

{¶ 7} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are

supported by competent, credible evidence. *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

{¶ 8} The permissible scope of a search is governed by the terms set forth in the search warrant. *State v. Simmons*, 12th Dist. Warren No. CA2004-11-138, 2005-Ohio-7036. If the search's scope exceeds that permitted by the terms of the search warrant, the subsequent seizure is unconstitutional unless a recognized exception applies. *Id.* "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820-821, 102 S.Ct. 2157 (1982).

{¶ 9} According to the terms of the search warrant, police were authorized to search Workman's house for evidence relating to crimes being investigated by police and alleged to have been perpetrated by Workman's stepson who lived in the home. The warrant expressly authorized the search for

> Cell phone(s) utilized by Amanda Lilly, to be held pending additional search warrant for analysis.
>
> Gym Shoes worn by [Workman's stepson], for later trace examination for glass fragments.
>
> Clothing worn by [Workman's stepson], to include a two tone blue pair of shorts and a black t-shirt, as shown in Exhibit "A."
>
> Clermont County Juvenile Probation Alcohol Monitor, removed from [Workman's stepson].
>
> Cell Phones, tablets, computers or other multimedia devices used by [Workman's stepson].

Multimedia Memory Storage devices to include, SD cards, thumb drives, external hard drives, compact disks or any other multimedia storage device.

Cigarette packages and/or cellophane packaging containing tax stamp identification.

Any other item located in violation of the Ohio Revised Code.

{¶ 10} In executing the search, officers searched for these items believed to be evidence tying Workman's stepson to the crime spree. Officers were assigned to different rooms of the home and tasked with logging items found in each room. Detective Ken Mullis of the Union Township Police Department testified at the motion to suppress hearing that the search of Workman's home was intended to locate "small items," such as cigarette packs, cellophane wrappers, multimedia devices, and cell phones that would implicate involvement of Workman's stepson in the burglaries and related crimes that occurred during the spree. Detective Mullis testified that police had reason to believe that the items were "in the possession of that residence," making reference to Workman's home.

{¶ 11} While Detective Mullis did not know which of the home's four bedrooms belonged to Workman's stepson, his testimony demonstrates that the some of the objects specified in the warrant were seized from several locations throughout the home, such as clothing, gym shoes, and a cell phone. While looking for the various items specified in the warrant, officers also located marijuana, hash, and large sums of cash in multiple locations throughout the home. Detective Mullis testified that when police searched a bedroom, later revealed to be the bedroom shared by Workman and Lilley, officers found marijuana and pills stacked within a clothing pile in or near the closet of the bedroom.

{¶ 12} After reviewing the record, we find that the police properly seized the evidence and that the search was executed within the scope of the warrant. The warrant authorized a search of Workman's house, including places where the items could be located. The items,

- 4 -

such as cigarette packages and cell phones, are small enough that they could have been located in a multitude of spaces throughout the home, including those that were ultimately searched.

{¶ 13} Additionally, the warrant permitted a search for clothing, and Detective Mullis testified that the drugs were found in a clothing pile. Thus, the officers were operating within the proper scope of the warrant by searching for clothes in a pile of laundry near the closet. Moreover, and regardless of whether Detective Mullis knew the bedroom belonged to Workman rather than his stepson, the warrant specifically authorized a search for cell phones utilized by Amanda Lilly, who shared Workman's bedroom. Thus, the scope was not exceeded.

{¶ 14} Workman also challenges the search of a safe as being beyond the scope of the warrant. During the search, officers located a safe, and found hash therein. However, the search warrant specifically authorized the search of "all containers or safes (locked or unlocked) as well as vehicles and outbuildings located within the curtilage of" Workman's home. As such, the search of the safe was expressly within the scope of the warrant. This is especially true where smaller instrumentalities of the crime spree, such as cell phones and cigarette packs, could have been hidden in the safe.

{¶ 15} After a full review of the record, we find that the trial court properly denied Workman's motion to suppress because the officers did not exceed the scope of the warrant during the search. Thus, Workman's first assignment of error is overruled.

{¶ 16} Assignment of Error No. 2:

{¶ 17} THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. WORKMAN BY FAILING TO MERGE THE DRUG TRAFFICKING OFFENSE WITH THE CORRUPTING ANOTHER WITH DRUGS.

{¶ 18} Workman argues in his second assignment of error that the trial court should

- 5 -

have merged his convictions as allied offenses.

{¶ 19} Pursuant to R.C. 2941.25, Ohio's allied-offenses statute, the imposition of multiple punishments for the same criminal conduct is prohibited. *State v. Rodriguez*, 12th Dist. Butler No. CA2015-02-024, 2016-Ohio-452. If any of the following occurs, the defendant may be convicted and sentenced for multiple offenses: "(1) the offenses are dissimilar in import or significance – in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 25. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23.

{¶ 20} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. An appellate court applies a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 14.

{¶ 21} Workman was convicted of trafficking marijuana in violation of R.C. 2925.03(A)(2), which forbids a person to, "Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows * * * that the controlled substance * * * is intended for sale or resale by the offender or another person." This conviction was elevated from a felony of the third degree to a felony of the second degree because the act was done within the vicinity of a juvenile. Workman was also convicted of corrupting another with drugs in violation of R.C.

2925.02(A)(4)(c), which provides that no person shall knowingly and by any means, "induce or cause a juvenile who is at least two years the offender's junior to commit a felony drug abuse offense, when the offender knows the age of the juvenile or is reckless in that regard."

{¶ 22}   After reviewing the record, we find that the trial court properly determined that the offenses were not allied.  Under the facts of this case, the offenses of trafficking and corrupting another with drugs caused separate, identifiable harm, and so were of dissimilar import, and the offenses were committed with a separate animus and conduct.

{¶ 23}   The record indicates that the victim of the trafficking was the public at large, and the victim involved in the corruption charge was Workman's stepson.  Even though the presence of Workman's stepson elevated the trafficking offense to a second-degree felony, such presence did nothing to change the victim of the trafficking offense from being the general public.

{¶ 24}   Moreover, the harm associated with drug trafficking within the vicinity of a juvenile is still different than corrupting a juvenile with drugs.  Dealing drugs is inherently dangerous, where violence is a common side effect, so that the Ohio legislature made trafficking drugs in the vicinity of a juvenile an enhanced crime.  Conversely, the harm of corrupting another with drugs, which occurred here because Workman had his stepson participate in selling drugs and a use-quantity of drugs was found in the stepson's bedroom, had the direct result only on the stepson by subjecting him to potential violence associated with trafficking and even criminal prosecution for drug possession.

{¶ 25}   We also find that the conduct and animus is different for the crimes. Corrupting the stepson did not require Workman to prepare drugs for distribution, as does a charge of trafficking.  The specific act that led the state to charge Workman with trafficking was the discovery of three pounds of marijuana, which had been prepared for distribution, in Workman's bedroom.  The specific act that led the state to charge Workman with corrupting

- 7 -

the stepson was the fact that Workman induced his stepson into selling drugs, including hash and traces of marijuana found in the stepson's bedroom. Moreover, Workman's money was kept separate from his stepson's, thus indicating that their endeavors constituted separate conduct from each other.

{¶ 26} Having found that the offenses were of dissimilar import and were committed with a different animus and conduct, the trial court properly determined that the crimes were not allied offenses. As such, Workman's second assignment of error is overruled.

{¶ 27} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.