[Cite as *State v. Crossen*, 2011-Ohio-2509.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                         |   | JUDGES:                      |
|-------------------------|---|------------------------------|
| STATE OF OHIO           | : | Hon. W. Scott Gwin, P.J.     |
|                         | : | Hon. William B. Hoffman, J.  |
| Plaintiff-Appellee      | : | Hon. Patricia A. Delaney, J. |
|                         | : |                              |
| -vs-                    | : |                              |
|                         | : | Case No. 2010-COA-027        |
| JAMES E. CROSSEN        | : |                              |
|                         | : |                              |
| Defendant-Appellant     | : | O P I N I O N                |

CHARACTER OF PROCEEDING:        Criminal appeal from the Ashland Municipal
                                Court, Case No. 10-CRB-566

JUDGMENT:                       Affirmed in part; Reversed in part and
                                Remanded

DATE OF JUDGMENT ENTRY:         May 24, 2011

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

DAVID M. HUNTER                         THOMAS L. MASON
Assistant Law Director                  P.O. Box 345
1213 East Main Street                   Ashland, OH 44805
Ashland, OH  44805

*Gwin, P.J.*

{¶1} Defendant-appellant James E. Crossen appeals his conviction and sentence in the Ashland County Municipal Court for one count of Possessing Drug Abuse Instruments, a misdemeanor of the second degree in violation of Ohio Revised Code 2925.12 (A). The plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On June 2, 2010, Officer Brian Evans of the City of Ashland Police Department responded to a call involving a woman who reportedly could not convince a man to exit her vehicle. Officer Evans arrived in an unmarked cruiser, saw what he believed to be the complainant's vehicle in a parking lot and saw a male walking away from the vehicle. Officer Evans recognized the male and followed him. When a marked cruiser passed, Officer Evans testified he saw the male place his hand inside a tractor wheel well and continued walking. The Officer parked, called the individual's name, and jogged after him. Appellant kept walking until about the third time Officer Evans called his name, when he stopped and turned. Officer Evans motioned for appellant to come to him, appellant complied with the Officer's request. Officer Evans told him to turn around and put his hands behind his back, which he did. Appellant asked what was going on, to which Officer Evans responded, "Well, I just saw you put something back there on that tractor." Appellant denied that he had.

{¶3} Two uniformed officers arrived on the scene and appellant was placed in handcuffs. Appellant was also read his *Miranda* rights by Officer Evans at this time. Officer Evans then went back to the tractor wheel well and found a syringe. Officer Evans returned to appellant. He asked appellant about the syringe. Appellant initially

denied putting it on the tractor, but ultimately admitted that he had. He also stated that he was the person in the vehicle that would not get out. Appellant was driven to the police station where Officer Evans continued his questioning of him approximately 20-30 minutes later. He did not re-*Mirandize* appellant. Appellant made other incriminating statements, including that the syringe was used to inject heroin.

{¶4} Appellant filed a motion to suppress evidence, which was heard on August 13, 2010. On August 25, 2010 the trial court issued a Judgment Entry overruling the motion.

{¶5} On September 13, 2010 appellant entered a plea of No Contest to the charge, was found Guilty, and was sentenced to serve sixty (60) days in the Ashland County Jail.

{¶6} Appellant has timely appealed raising as his sole assignment of error,

{¶7} "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY RULING THAT POLICE HAD PROBABLE CAUSE TO ARREST THE APPELLANT."

I.

{¶8} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 154-155, 797 N.E.2d 71, 74, 20030-Ohio-5372 at ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap* (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v.*

*Long* (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1; *State v. Medcalf* (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539; See, generally, *United States v. Arvizu* (2002), 534 U.S. 266, 122 S.Ct. 744; *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657. That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review. *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

**{¶9}** Appellant's sole assignment of error relates to the propriety of the trial court's overruling of his motion to suppress. Specifically, appellant contends that the state failed to produce sufficient evidence that Officer Evans had probable cause to arrest him on June 2, 2010.

**{¶10}** Contact between police officers and the public can be characterized in three different ways. *State v. Richardson,* 5th Dist. No.2004CA00205, 2005-Ohio-554 at ¶ 23-27. The first is contact initiated by a police officer for purposes of investigation. "[M]erely approaching an individual on the street or in another public place [,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. *United States v. Flowers* (6th Cir. 1990), 909 F.2d 145, 147. The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); see also *INS v. Delgado,* 466 U.S. 210, 212, 104 S.Ct. 1758, 80

L.Ed.2d 247 (1984). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Bostick, supra,* at 434-435, 111 S.Ct. 2382 (citations omitted). The person approached, however, need not answer any question put to him, and may continue on his way. *Florida v. Royer* (1983), 460 U .S. 491, 497-98. Moreover, he may not be detained even momentarily for his refusal to listen or answer. Id.

{¶11} The second type of contact is generally referred to as "a *Terry* stop" and is predicated upon reasonable suspicion. *Richardson,* supra*; Flowers,* 909 F.2d at 147; See *Terry v. Ohio* (1968), 392 U.S. 1. This temporary detention, although a seizure, does not violate the Fourth Amendment. Under the *Terry* doctrine, "certain seizures are justifiable ... if there is articulable suspicion that a person has committed or is about to commit a crime" *Florida,* 460 U.S. at 498. In holding that the police officer's actions were reasonable under the Fourth Amendment, Justice Rehnquist provided the following discussion of the holding in *Terry:* "In *Terry* this Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. The Fourth Amendment does not require a police officer who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may

be most reasonable in light of the facts known to the officer at the time. *Adams v. Williams* (1972), 407 U.S. 143, 145-47, 92 S.Ct. 1921, 1923-24, 32 L.Ed.2d 612.

{¶12} The third type of contact arises when an officer has "probable cause to believe a crime has been committed and the person stopped committed it." *Richardson,* supra*; Flowers,* 909 F. 2d at 147. A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." *State v. Heston* (1972), 29 Ohio St.2d 152, 155-156, 280 N.E.2d 376, quoting *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States* (1996), 517 U.S. 690, 696, 116 S.Ct. 1657, 1661-1162. A police officer may draw inferences based on his own experience in deciding whether probable cause exists. See*,* e.g., *United States v. Ortiz* (1975), 422 U.S. 891, 897, 95 S.Ct. 2585, 2589.

{¶13} The Ohio Supreme Court has held that a police officer's statement "Hey, come here a minute," while nominally couched in the form of a demand, is actually a request that a citizen is free to regard or to disregard. *State v. Smith* (1989), 45 Ohio St.3d 255, 258-259, 544 N.E.2d 239, 242, reversed *sub nom. Smith v. Ohio* (1990), 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464.

{¶14} In the case at bar, Officer Evans' initial calling out to appellant and motioning him to come over to him would be characterized as a consensual encounter. Nothing in the record establishes that appellant could not have continued to walk away from Officer Evans as he had done the first two times the Officer hailed him. However, once appellant was ordered to place his hands behind his back, confronted with two uniformed officers in addition to Officer Evans, placed in handcuffs and read his *Miranda* rights the situation quickly changed.

{¶15} It is well established that a warrantless arrest without probable cause is unconstitutional. *State v. Timson* (1974), 38 Ohio St.2d 122, 311 N.E.2d 16, paragraph one of the syllabus. Probable cause arises when "the facts and circumstances within [a police officer's] knowledge and of which [he has] reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief" that criminal conduct was afoot. *Carroll v. United States* (1924), 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543, 555; see, also, *State v. Heston* (1972), 29 Ohio St.2d 152, 156, 280 N.E.2d 376. If, after being arrested, a defendant asserts that probable cause was lacking at the time of arrest, the State bears the burden of proof on the issue of whether probable cause existed at the time of arrest. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus.

{¶16} In *United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, the United States Supreme Court made the following observation: "[w]e conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a

seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. See *Terry v. Ohio,* supra, 392 U.S., at 19, n. 16, 88 S.Ct. at 1879, n. 16; *Dunaway v. New York*, 442 U.S. 200, 207, and n. 6, 99 S.Ct. 2248, 2253, 60 L.Ed.2d 824; 3 W. LaFave, Search and Seizure 53-55 (1978)". Id. at 544, 100 S.Ct. at 1877. On the facts of this case, clearly a "seizure" of the appellant occurred.

{¶17} Upon review, under the totality of the circumstances, we conclude the events in the case *sub judice* constituted an arrest such that the officers were required to have probable cause to believe a crime had been committed and that appellant committed it. However, that does not end our inquiry. Rather, the question is whether Officer Evans' discovery of the syringe *was the result of* the unlawful arrest. *See United States v. Bentley* (6th Cir. 1994)*,* 29 F. 3d 1073, 1075-76 (concluding that, even though the defendant was arrested prematurely, the police had reasonable suspicion to detain him, and evidence observed in plain view constituted an independent basis to justify the subsequent search of the defendant's vehicle).

{¶18} In *United States v. Bentley* supra, the Sixth Circuit Court of Appeals refused to suppress evidence obtained immediately after an illegal arrest. In *Bentley,* agents of the Bureau of Alcohol, Tobacco & Firearms ("ATF") stopped the defendants' vehicle and immediately handcuffed them and put them in the back of a police cruiser. The ATF agents then approached their vehicle and observed a variety of firearms and

firearm boxes, which the agents collected as evidence. *State v. Blake*, Columbiana App. No. 01 CO 44, 2002-Ohio-5221 at ¶ 46-47.

{¶19} The defendants filed a motion to suppress the evidence found in the vehicle. The *Bentley* court held that the arrest was not supported by probable cause. Id*.* at 1075. Nevertheless, the court held that there were independent reasons to justify the search of the vehicle and the seizure of evidence apart from the illegal arrest. Id*.* The court found that the original stop of the vehicle was constitutionally permissible under *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889, and that the guns were discovered pursuant to the plain view doctrine. Id. at 1075-1076. Because these independent reasons justified the manner in which the government acquired the evidence, the court held that, "the premature arrest played no role in the seizing of the evidence * * *." Id. at 1076. Accord *United States v. Eylicio-Montoya* (C.A. 10, 1995), 70 F.3d 1158, 1167; cf. *People v. Tariq* (1991), 170 A.D.2d 716, 565 N.Y.S.2d 614 (statements made at police station were not the fruit of illegal arrest where detention in police station was otherwise legal); see also *People v. Monson* (1967), 255 Cal.App.2d 689, 63 Cal.Rptr. 409 (trial court is free to infer that legal *Terry* stop, rather than illegal arrest, was the basis for police acquiring evidence). *State v. Blake,* supra.

{¶20} In the case at bar, the manner in which appellant was detained did rise to the level of an arrest, but the officers' display of authority and use of force to detain him did not create the circumstances that led to the discovery of the syringe. Rather, it was Officer Evans' observation that appellant had placed something inside the tire well of the tractor that led to the discovery of the syringe. See, *United States v. Howard* (6th Cir 2010), 621 F.3d 433, 451. Police may freely seize and search abandoned items, such

as items thrown from vehicles during a police chase, items placed in trash containers, or items dropped by a pedestrian while fleeing from the police. See, e.g., *Abel v. United States* (1960), 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668; *State v. Freeman* (1980), 64 Ohio St.2d 291, 296, 18 O.O.3d 472, 414 N.E.2d 1044; *United States v. Flynn* (C.A.10, 2002), 309 F.3d 736; *United States v. Mustone* (C.A.1, 1972), 469 F.2d 970; *State v. Hill* (1998), 127 Ohio App.3d 265, 269, 712 N.E.2d 791. Since the Fourth Amendment protects only those places and items that a person expects to remain private, and since abandoned items are available for anyone to find and peruse, courts have consistently denied Fourth Amendment protection over abandoned items. *Bond v. United States* (C.A.7, 1996), 77 F.3d 1009, 1013. See, *State v. Dubose* (2005), 164 Ohio App.3d 698, 843 N.E.2d 1222, 2005-Ohio-6602 at ¶42.

**{¶21}** Accordingly, we find that the premature arrest played no role in the seizing of the evidence from the tractor. It follows that the fact that the arrest was premature is not grounds for the suppression of that evidence.

**{¶22}** Appellant also argues that the trial court should have suppressed the statements he made to Officer Evans after the discovery of the drugs.

**{¶23}** In *Barry v. New Jersey*[1], the United States Supreme Court observed,

**{¶24}** "In order for a statement given to police after an illegal arrest to be admissible at trial, the statement must not only be voluntary by Fifth Amendment standards, but it must also not be the result of exploiting the illegal arrest; rather, it must be 'an act of free will [sufficient] to purge the primary taint.' *Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963); *Brown v. Illinois*, 422 U.S.

---

[1] See, *Barry v. New Jersey,* 171 N.J.Super. 543, 410 A.2d 259 (1979), *cert. granted,* 84 N.J. 388, 420 A.2d 316 (1980), *rev'd,* 86 N.J. 80, 429 A.2d 581 (1981), *cert. denied,* 454 U.S. 1017, 102 S.Ct. 553, 70 L.Ed.2d 415 (1981) (the Supreme Court denied certiorari, with three justices dissenting).

590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975). *Brown* held that Miranda warnings, by themselves, cannot always make a confession 'sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession.' 422 U.S., at 603, 95 S.Ct. at 2261. By focusing on the causal connection between an illegal arrest and a subsequent confession, *Brown* sought to implement the policies behind the use of the exclusionary rule to effectuate the Fourth Amendment. *Dunaway v. New York*, 442 U.S. 200, 218-219, 99 S.Ct. 2248, 2259-2260, 60 L.Ed.2d 824 (1979). It identified three factors for determining whether it is necessary to exclude a confession obtained following an illegal arrest: 'The temporal proximity of the arrest and the confession, the presence of intervening circumstances, ... and, particularly, the purpose and flagrancy of the official misconduct are all relevant.' *Brown v. Illinois*, supra, 422 U.S. at 603-604, 95 S.Ct. at 2261-2262 (footnotes omitted)." *Barry v. New Jersey*, 454 U.S. at 1019, 102 S.Ct. at 554. In articulating this multi-factored test, the Court rejected a 'but for' approach to admissibility of a confession following an illegal arrest, and recognized that 'persons arrested illegally frequently may decide to confess, as an act of free will unaffected by the initial illegality.' *Brown,* 422 U.S. at 603. See, *State v. Cranford*, Montgomery App. No. 20633, 2005-Ohio-1904 at ¶26.

**{¶25}** In *Brown,* the Court stated that the giving of *Miranda* warnings, though relevant to a determination of whether a confession was obtained by exploitation of the illegal arrest, was not dispositive.

**{¶26}** In the case at bar, the State argues that appellant was read his *Miranda* rights, and further was lawfully arrested after the syringe was discovered, therefore his

arrest was with probable cause. The record reveals appellant was never advised that he was under arrest. (T. at 21).

**{¶27}** Officer Evans did not read appellant his *Miranda* rights after discovery of the syringe, during transportation or while appellant was detained and questioned at the police station. In terms of the purposes of the exclusionary rule, allowing a confrontation such as occurred in this case to qualify as an intervening circumstance would permit the police to seize and detain any person without probable cause, secure in the knowledge that a confession later obtained by confronting the accused with evidence against him would be admissible. *Barry v. New Jersey*, supra 454 U.S. at 1021, 102 S.Ct. at 555. Nothing in the facts suggests that there was any intervening circumstance that may have served to separate the statements at the scene from the illegal arrest.

**{¶28}** The third *Brown* factor to be considered is the purpose and flagrancy of the police conduct. "Although the police conduct here was not designed to cause fright and confusion as it was in *Brown*, 422 U.S., at 605, 95 S.Ct. at 2262, the police admittedly lacked probable cause to arrest petitioner, and the purpose of the arrest was to detain 'in the hope that something might turn up.' *Ibid.* This purpose is itself sufficient to exclude a confession, absent a sufficient intervening event. *Dunaway v. New York, supra*, 442 U.S., at 218, 99 S.Ct. at 2259." *Barry v. New Jersey*, supra 454 U.S. at 1021, 102 S.Ct. at 555. In the case at bar, appellant was confronted with two uniformed police officers and one undercover officer. Appellant was ordered to place his hands behind his back. He was placed in handcuffs. At that point the officers did not have probable cause to arrest appellant. The Fourth Amendment forbids the police from arresting someone because they feel that person is involved in a crime. Probable cause

is required, not suspicion. Accordingly, the statements obtained from appellant at the scene must be suppressed.

**{¶29}** Appellant also made incriminating statements while in custody at the police station.  That interrogation occurred twenty to thirty minutes after the initial encounter. (T. at 13). Appellant was not advised of his *Miranda* rights while in custody at the police station before being questioned by Officer Evans.

**{¶30}** The question of an effective waiver of a Federal Constitutional right in a State criminal proceeding is governed by Federal standards. *Boykin v. Alabama* (1969), 395, U.S. 238. (Citing *Douglas v. Alabama* (1965) 380 U.S. 415). For a waiver to be valid under the Due Process clause of the United States Constitution, it must be: "[a]n intentional relinquishment or abandonment of a known right or privilege." *Boykin*, supra, 395 U.S. at 243 n. 5 (Quoting *Johnson v. Zerbst* (1938), 304 U.S. 458).

**{¶31}** In *State v. Dailey* (1990), 53 Ohio St.3d 88, 559 N.E.2d 459, the Ohio Supreme Court outlined the manner in which a suspect must be informed of his or her *Miranda* rights: "[i]n *Miranda,* supra*,* the court indicated that 'the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.' Id. at 444, 86 S.Ct. at 1612.

**{¶32}** We note that there is no written or recorded waiver of rights by appellant in the record of this case. Accordingly, nothing in the record suggests that appellant knowingly, intelligently and voluntarily waived his rights prior to questioning at the police station. Here as we have previously noted, there is nothing in the record to establish that the statements made at the police station were not obtained by exploitation of the

initial illegal arrest. As we have noted, appellant was not informed that he was under arrest after the syringe was discovered; nor was he advised of, or asked to waive, his constitutional rights subsequent to the discovery.

{¶33} Accordingly, appellant's sole assignment of error is sustained in part and overruled in part.

{¶34} For the forgoing reasons, the judgment of the Ashland Municipal Court, Ashland County, Ohio is affirmed in part and reversed in part, and this case is remanded for proceedings in accordance with our opinion and the law.

By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN

_____

HON. PATRICIA A. DELANEY

WSG:clw 0428

IN THE COURT OF APPEALS FOR ASHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JAMES E. CROSSEN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2010-COA-027 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Ashland Municipal Court, Ashland County, Ohio is affirmed in part and reversed in part, and this case is remanded for proceedings in accordance with our opinion and the law. Costs to be divided equally between the parties.

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. PATRICIA A. DELANEY