[Cite as *State v. Boswell*, 2014-Ohio-886.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 13-COA-018 |
| EDWARD M. BOSWELL | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Ashland Municipal
Court, Case No. 13CRB00279

JUDGMENT:     Reversed and Remanded

DATE OF JUDGMENT ENTRY:     March 7, 2014

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

W. DAVID MONTAGUE                   JOHN KEARNS, JR.
Assistant Law Director                  Mason, Mason & Kearns
1213 E. Main Street                     153 West Main Street
Ashland, OH 44805                      Ashland, OH 44805

*Gwin, P.J.*

{¶1} Appellant Edward M. Boswell ["Boswell"] appeals a judgment of the Ashland Municipal Court, Ashland County, Ohio overruling his motion to suppress.

*Facts and Procedural History*

{¶2} On March 1, 2013, at 10:23 a.m., Boswell and a friend were walking south bound on the sidewalk on Cottage Street. Officer Craig Kiley of the Ashland City Police Department was on routine patrol driving a marked cruiser northbound on Cottage Street. He saw the two individuals. Officer Kiley turned his cruiser around, drove past the individuals and parked on the street behind them. Officer Kiley then exited the cruiser, walked across the street approached Boswell and his friend, saying something to the effect, "Hey. What's going on?" The two stopped in response to the officer's comments.

{¶3} Officer Kiley asked the pair where they were coming from and where they were going. He then asked for identification. The pair cooperated and complied with the officer's requests. Officer Kiley then asked if either of them had anything on him that he should not. Boswell's friend said that he did not and gave the officer permission to search his backpack. Boswell stated that he did not want to be searched. The officer went through the backpack on the other person and found a battery powered scale and some alleged marijuana flakes, or "shake." The officer stated that while he was searching the backpack, he noticed that Boswell was wearing a bulky coat, that the sleeves of the bulky coat extended over his hands, and that Boswell was acting fidgety and nervous. Based upon his "Cop radar," he thought something was not right and told Boswell that he was going to search him for weapons. Boswell stated that he did not

wish to be searched, but the officer stated that he did not need his consent. The officer found an object in his left pocket that was later determined to be a marijuana pipe, about two inches long, 1/4 inch in diameter, with an angled piece about an inch high. The pipe was broken.

{¶4} The officer placed only Boswell in handcuffs. There was no evidence that the other individual was further detained or even charged with any offence. The officer then retrieved a cell phone from Boswell, who told the officer initially that he did not want him to look through it.

{¶5} Officer Kiley then told Boswell that he could let the officer search it right there and get it back, or the officer could search it at the police department. After Boswell was charged with possession of drug paraphernalia and read his *Miranda* rights, Boswell allowed the officer to look through his phone. Officer Kiley observed a conversation about marijuana. After observing this conversation, the phone was returned to the Boswell. Officer Kiley then issued Boswell a summons and took the handcuffs off Boswell. Boswell was then permitted to leave.

{¶6} Boswell filed a motion to suppress the alleged paraphernalia, as well as statements that he made to the officer and the statements that were found on his cell phone. After an evidentiary hearing during which Officer Kiley and Boswell testified, the trial court overruled the motion. Boswell subsequently pled "no contest" and was found guilty. The trial court sentenced Boswell to five days in jail and ordered him to pay the court costs. Boswell's driver's license was also suspended for six months.

*Assignment of Error*

{¶7} Boswell raises one assignment of error,

{¶8}    "I. THE TRAIL COURT ERRED WHEN IT RULED THAT PHYSICAL EVIDENCE WAS PROPERLY OBTAINED BY LAW ENFORCEMENT."

*ANALYSIS*

{¶9}    Appellate review of a motion to suppress presents a mixed question of law and fact. *State v.* Burnside, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside, supra; Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist.1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist.1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See B*urnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

**{¶10}** Boswell's sole assignment of error relates to the propriety of the trial court's overruling of his motion to suppress.

**{¶11}** Contact between police officers and the public can be characterized in three different ways. *State v. Richardson*, 5th Dist. Stark No.2004CA00205, 2005–Ohio–554, ¶23–27. The first is contact initiated by a police officer for purposes of investigation. "[M]erely approaching an individual on the street or in another public place [,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. *United States v. Flowers*, 909 F.2d 145, 147(6th Cir. 1990). The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *see also INS v. Delgado*, 466 U.S. 210, 212, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984).

> Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Bostick,* 501 U.S. at 434–435, 111 S.Ct. 2382 (citations omitted). The person approached, however, need not answer any question put to him, and may continue on his way. *Florida v. Royer* (1983), 460 U.S. 491, 497–98. Moreover, he may not be detained even momentarily for his refusal to listen or answer. Id. "So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547,

1552, 113 L.Ed.2d 690 (1991), the encounter is consensual and no reasonable suspicion is required.

*Bostick*, 501 U.S. at 434, 111 S.Ct. 2382, 115 L.Ed.2d 389.

**{¶12}** The second type of contact is generally referred to as "a *Terry* stop" and is predicated upon reasonable suspicion. *Richardson, supra; Flowers*, 909 F.2d at 147; *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889(1968). This temporary detention, although a seizure, does not violate the Fourth Amendment. Under the *Terry* doctrine, "certain seizures are justifiable ... if there is articulable suspicion that a person has committed or is about to commit a crime" *Florida v. Royer*, 460 U.S. at 498. In holding that the police officer's actions were reasonable under the Fourth Amendment, Justice Rehnquist provided the following discussion of the holding in *Terry*,

> In *Terry* this Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. The Fourth Amendment does not require a police officer who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo mo- monetarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams*, 407 U.S. 143, 145–47, 92 S.Ct. 1921, 1923–24, 32 L.Ed.2d 612(1972).

**{¶13}** The third type of contact arises when an officer has "probable cause to believe a crime has been committed and the person stopped committed it." *Richardson*, 2005-Ohio-554, ¶27; *Flowers*, 909 F.2d at 147. A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." *State v. Heston*, 29 Ohio St.2d 152, 155–156, 280 N.E.2d 376(1972), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142(1964). "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 1661–1162(1996). A police officer may draw inferences based on his own experience in deciding whether probable cause exists. *See, e.g., United States v. Ortiz*, 422 U.S. 891, 897, 95 S.Ct. 2585, 2589(1975).

**{¶14}** The Ohio Supreme Court has held that a police officer's statement "Hey, come here a minute," while nominally couched in the form of a demand, is actually a request that a citizen is free to regard or to disregard. *State v. Smith*, 45 Ohio St.3d 255, 258–259, 544 N.E.2d 239, 242(1989), *reversed sub nom. Smith v. Ohio*, 494 U.S. 541,

110 S.Ct. 1288, 108 L.Ed.2d 464(1990); *State v. Crossen*, 5th Dist. Ashland No. 2010-COA-027, 2011-Ohio-2509, ¶13.

{¶15} In *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357(1979), the United States Supreme Court held that the application of a Texas statute to detain appellant and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe the appellant was engaged or had engaged in criminal conduct. The court further held that "detaining appellant to require him to identify himself constituted a seizure of his person subject to the requirement of the Fourth Amendment that the seizure be 'reasonable.' *Cf. Terry v. Ohio, supra*. The Fourth Amendment requires that such a seizure be based on specific, objective facts indicating that society's legitimate interests require such action, or that the seizure be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers." *Brown, supra*, at 51, 99 S.Ct. at 2640, 61 L.Ed.2d at 362, *citing Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660(1979).

{¶16} In *Brown,* two police officers, while cruising near noon in a patrol car, observed appellant and another man walking away from one another in an alley in an area with a high incidence of drug traffic. They stopped and asked appellant to identify himself and explain what he was doing. One officer testified that he stopped appellant because the situation "looked suspicious and we had never seen that subject in that area before." The officers did not claim to suspect appellant of any specific misconduct, nor did they have any reason to believe that he was armed. When appellant refused to identify himself, he was arrested for violation of a Texas statute which makes it a criminal act for a person to refuse to give his name and address to an officer "who had

lawfully stopped him and requested the information." Appellant's motion to set aside information charging him with violation of the statute on the ground that the statute violated the First, Fourth, Fifth, and Fourteenth Amendments was denied, and he was convicted and fined. The El Paso County Court's rejection of his claim was affirmed by the highest state court. *See, State v. Jones,* 70 Ohio App.3d 554, 558-559, 591 N.E.2d 810 (2nd Dist. 1990).

{¶17} On further appeal, the United States Supreme Court entered a reversal. Chief Justice Burger delivered the opinion for a unanimous court and stated:

> The flaw in the State's case is that none of the circumstances preceding the officers' detention of appellant justified a reasonable suspicion that he was involved in criminal conduct. Officer Venegas testified at appellant's trial that the situation in the alley 'looked suspicious,' but he was unable to point to any facts supporting that conclusion. There is no indication in the record that it was unusual for people to be in the alley. The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct. In short, the appellant's activity was no different from the activity of other pedestrians in that neighborhood. When pressed, Officer Venegas acknowledged that the only reason he stopped appellant was to ascertain his identity. The record suggests an understandable desire to assert a police presence; however, that purpose does not negate Fourth Amendment guarantees.

In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference. The Texas statute under which appellant was stopped and required to identify himself is designed to advance a weighty social objective in large metropolitan centers: prevention of crime. But even assuming that purpose is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it. When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits. *See Delaware v. Prouse, supra*, at 661, 99 S.Ct., at 1400 [59 L.Ed.2d, at 672].

The application of Tex.Penal Code Ann., Tit. 8, § 38.02 (1974), to detain appellant and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe appellant was engaged or had engaged in criminal conduct. Accordingly, appellant may not be punished for refusing to identify himself, and the conviction is Reversed."

443 U.S. at 51–53, 99 S.Ct. at 2641, 61 L.Ed.2d at 362–363.

{¶18} Under any objective view of the evidence, the conduct of Officer Kiley in the case at bar resulted in a detention or seizure of Boswell prior to the search of his person and telephone. Officer Kiley simply observed two young men walking down the sidewalk at 10:30 a.m. No testimony was presented that it was unusual for citizens to be

walking at this time of day in this particular location. No evidence was presented that the area was a "high crime" of "drug activity" area. Neither individual was acting suspicious in any manner. Officer Kiley was unable to point to any "furtive" behavior on the part of the Boswell or his companion as they walked down the sidewalk.

**{¶19}** In the case at bar, in the absence of any basis for suspecting Boswell of misconduct, the balance between the public interest and Boswell's right to personal security and privacy tilts in favor of freedom from police interference. There is not the slightest suggestion in this case that Boswell had violated or was about to violate the law when the officer requested that Boswell produce his identification. If police officers may approach citizens under circumstances shown in this case, it means that the police may at any time and any place for any reason or no reason whatsoever stop citizens and asked what they are doing and whom they are. Allowing police officer's to require people to show their identification absent a reasonable basis to do so serves no legitimate police function; allowing police officers to require people to show their identification when the officers have shown a reasonable basis for the request does. By requiring officers to show a reasonable basis to support the conduct, the constitutional rights of individuals are preserved and legitimate police function is not impeded. *State v. Daniel,* 12 S.W.2d 420, 431 (Tenn. 2000)(Byer, Special Justice, concurring in part, dissenting in part).

**{¶20}** In the case at bar, Officer Kiley was unable to point to *any facts* supporting his conclusion that the situation on the public sidewalk in broad daylight looked suspicious. Thus this case presents us with a classic example of the "unparticularized suspicion or hunch" warned against in *Terry.*

**{¶21}** Appellant's sole assignment of error is sustained.

**{¶22}** The judgment of the Municipal Court for Ashland County, Ohio is reversed, and this case is remanded to that Court for proceedings in accordance with our opinion and the law.

By Gwin, P.J.

Wise, J., and

Baldwin, J., concur