[Cite as *State v. Romacko*, 2016-Ohio-1512.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| -vs- | : |  |
|  | : |  |
| JONI L. ROMACKO | : | Case No. 2015 AP 0063 |
|  | : |  |
| Defendant-Appellee | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Criminal appeal from Tuscarawas County Court of Common Pleas, Case No. 2015CR020037

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    April 11, 2016

APPEARANCES:

For Plaintiff-Appellant

MICHAEL ERNEST
Assistant Prosecuting Attorney
125 E. High Ave.
New Philadelphia, OH 44663

For Defendant-Appellee

MARK A. PERLAKY
Tuscarawas County Public Defender
153 N. Broadway St.
New Philadelphia, OH 44663

*Gwin, P.J.*

{¶1}   Appellant, the State of Ohio appeals the November 16, 2015 judgment entry of the Tuscarawas County Court of Common Pleas granting appellee, Joni L. Romacko's ["Romacko"] motion to suppress.

*Facts and Procedural History*

{¶2}   Romacko was indicted by the Tuscarawas County Grand Jury for one count of Possession of Cocaine, a felony of the fifth degree and one count Possession of Heroin, a felony of the fifth degree.

{¶3}   Romacko filed a motion to suppress evidence on August 14, 2015.  An oral hearing was conducted on October 14, 2015.  The state called one witness, Officer James Miller.  Romacko did not present any evidence at the hearing.

**Officer James Miller.**

{¶4}   Officer Miller testified that on September 3, 2014 at about 12:13 P.M., he was on patrol in the 1000 block of Union Avenue NW when he passed a female walking from an unnamed alley onto the 1000 block of Logan Ave NW.  Officer Miller stated that he traveled back to the area and remained stationary in his police cruiser.

{¶5}   Officer Miller observed the female walking south on Logan Avenue toward him.  Officer Miller watched as the female knocked on the door of a house.  No one answered the door.  Miller also watched the female appear to place an unidentified object into a trashcan, but he could not tell what, if anything, was placed in the can.

{¶6}   Officer Miller exited his vehicle, began walking towards the female. Officer Miller was wearing a body camera that recorded the interaction with Romacko. Officer

Miller could not recall how he began the conversation with Romacko. However, Officer Miller began asking her what she was doing and if she had any identification.

{¶7} Romacko produced identification for the officer, including her CPR license. Officer Miller testified that Romacko stated that she was a home health aide and that she worked for Ember Home Healthcare. Romacko told the officer that she was looking for a client's house. Officer Miller testified that she did not appear dressed for this type of work and she did not have any type of identification indicating that she worked for Ember Home Healthcare. Romacko replied that she had worked there two and one-half years and has never had an I.D. badge.

{¶8} Officer Miller testified that he then asked Romacko if she had anything in her pockets. Romacko responded that she did not have anything. Romacko stated that she was in a hurry and called someone, "Donna," on her cell phone to inform the party that she would be late. Romacko explained to Officer Miller that she had to be in Dennison to take someone to pain management at 1:30 p.m. Officer Miller then asked Romacko, "Would you have a problem pulling your pockets out for me?" Romacko began to comply. Officer Miller than tells Romacko, "Can you pull them all the way out, kinda keeping it tucked in half way there." According to Officer Miller, Romacko began to manipulate the pocket and he observed what appeared to be a blue balloon within the pocket. Officer Miller testified that balloons are commonly used for transporting heroin. Officer Miller ordered Romacko to "Hand me the balloon of drugs. You have heroin in your pocket hand it to me now."

{¶9} Officer Miller testified that Romacko then appeared to try to rip the glove apart in an effort to try to destroy something within the glove. Officer Miller had the

Romacko put the glove on his car so that it could not be destroyed. When asked where the glove came from, Romacko stated that the glove was for work as a home health care aid; she later stated that she found the glove in the street. (T. at 9).

{¶10} A search of the glove revealed crack cocaine. Miller then arrested Romacko.

**The trial court's decision.**

{¶11} In a Judgment Entry dated November 16, 2015, the trial court granted Romacko's Motion to Suppress. The trial court found that Romacko could not have felt free to leave the situation under the facts and circumstances, and was effectively seized unlawfully by Officer Miller. The trial court found this not a consensual encounter but was, instead, an investigatory police detention. The trial court further found that Officer Miller did not have a reasonable suspicion that Romacko was engaged in criminal activity. The trial court stated,

> The suggestion that Ms. Romacko, in this case, or any person in similar factual circumstances would realistically believe that they could, in essence, ignore a police officer's affirmative contact with them and questions of them, and simply walk away, denies the realities of police-citizen contact in the 21st Century. Had Ms. Romacko done exactly that in this case, it is certainly not far-fetched for her to expect that criminal charges of Obstructing Official Business and, at the extreme, Resisting Arrest, would have followed her refusal to answer Officer Miller's questions or her simply ignoring his inquiries.

*Assignment of Error*

{¶12}  The state raises one assignment of error,

{¶13}  "I. THE TRIAL COURT DID NOT ERR IN GRANTING THE MOTION TO SUPPRESS EVIDENCE FILED BY DEFENDANT-APPELLEE, AS A SEIZURE OF HER PERSON OCCURRED THAT WAS NOT CONSENSUAL AND NOT AUTHORIZED BY THE FOURTH AMENDMENT."

*Analysis*

{¶14}  Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility.  See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).  Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings.  See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996).  However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard.  See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996).  That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, *supra*.

Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

**Officer Miller's contact with Romacko.**

{¶15} Contact between police officers and the public can be characterized in three different ways. *State v. Richardson*, 5th Dist. Stark No. 2004CA00205, 2005–Ohio–554, ¶23–27. The first is contact initiated by a police officer for purposes of investigation. "[M]erely approaching an individual on the street or in another public place [,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. *United States v. Flowers*, 909 F.2d 145, 147(6th Cir. 1990). The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *see also INS v. Delgado*, 466 U.S. 210, 212, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Bostick,* 501 U.S. at 434-435, 111 S.Ct. 2382 (citations omitted).

> The person approached, however, need not answer any question put to him, and may continue on his way. *Florida v. Royer* (1983), 460 U.S. 491, 497–98. Moreover, he may not be detained even momentarily for his refusal to listen or answer. Id. So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991), the encounter is consensual and no reasonable suspicion is required.

{¶16} The second type of contact is generally referred to as "a *Terry* stop" and is predicated upon reasonable suspicion. *Richardson, supra; Flowers*, 909 F.2d at 147; *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889(1968). This temporary detention, although a seizure, does not violate the Fourth Amendment. Under the *Terry* doctrine, "certain seizures are justifiable ... if there is articulable suspicion that a person has committed or is about to commit a crime" *Florida*, 460 U.S. at 498. In holding that the police officer's actions were reasonable under the Fourth Amendment, Justice Rehnquist provided the following discussion of the holding in *Terry*,

> In *Terry* this Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. The Fourth Amendment does not require a police officer who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams*, 407 U.S. 143, 145–47, 92 S.Ct. 1921, 1923–24, 32 L.Ed.2d 612(1972).

{¶17} The third type of contact arises when an officer has "probable cause to believe a crime has been committed and the person stopped committed it." *Richardson*,

2005-Ohio-554, ¶27; *Flowers*, 909 F.2d at 147.  A warrantless arrest is constitutionally valid if:

> "[a]t the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense."

*State v. Heston*, 29 Ohio St.2d 152, 155–156, 280 N.E.2d 376(1972), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142(1964).  "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 1661–1162(1996).  A police officer may draw inferences based on his own experience in deciding whether probable cause exists.  *See, e.g., United States v. Ortiz*, 422 U.S. 891, 897, 95 S.Ct. 2585, 2589(1975).

{¶18}  The Ohio Supreme Court has held that a police officer's statement "Hey, come here a minute," while nominally couched in the form of a demand, is actually a request that a citizen is free to regard or to disregard.  *State v. Smith*, 45 Ohio St.3d 255, 258–259, 544 N.E.2d 239, 242(1989), *reversed sub nom. Smith v. Ohio*, 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464(1990); *State v. Crossen*, 5th Dist. Ashland No. 2010-COA-027, 2011-Ohio-2509, ¶13.

{¶19} In *United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, the United States Supreme Court made the following observation: "[w]e conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, *even where the person did not attempt to leave*, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. See *Terry v. Ohio, supra*, 392 U.S., at 19, n. 16, 88 S.Ct. at 1879, n. 16; *Dunaway v. New York*, 442 U.S. 200, 207, and n. 6, 99 S.Ct. 2248, 2253, 60 L.Ed.2d 824; 3 W. LaFave, Search and Seizure 53-55 (1978)". Id. at 544, 100 S.Ct. at 1877. (Emphasis added).

{¶20} In the case at bar, Officer Miller's body camera recorded the encounter. Officer Miller testified, "If she would've walked away there was no reason for me to stop her. I had no reason to continue to detain her, or to detain her I guess." (T. at 19). Officer Miller characterized the encounter as "consensual." (T. at 17-18).

{¶21} In *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357(1979), the United States Supreme Court held that the application of a Texas statute to detain appellant and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe the appellant was engaged or had engaged in criminal conduct. The court further held that detaining appellant to require him to identify himself constituted a seizure of his person subject to the requirement of the Fourth Amendment that the seizure be "reasonable." *Cf. Terry v. Ohio, supra*. The

Fourth Amendment requires that such a seizure be based on specific, objective facts indicating that society's legitimate interests require such action, or that the seizure be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers. *Brown, supra*, at 51, 99 S.Ct. at 2640, 61 L.Ed.2d at 362, *citing Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660(1979).

{¶22} In *Brown,* two police officers, while cruising near noon in a patrol car, observed appellant and another man walking away from one another in an alley in an area with a high incidence of drug traffic. They stopped and asked appellant to identify himself and explain what he was doing. One officer testified that he stopped appellant because the situation "looked suspicious and we had never seen that subject in that area before." The officers did not claim to suspect appellant of any specific misconduct, nor did they have any reason to believe that he was armed. When appellant refused to identify himself, he was arrested for violation of a Texas statute which makes it a criminal act for a person to refuse to give his name and address to an officer "who had lawfully stopped him and requested the information." Appellant's motion to set aside an information charging him with violation of the statute on the ground that the statute violated the First, Fourth, Fifth, and Fourteenth Amendments was denied, and he was convicted and fined. The El Paso County Court's rejection of his claim was affirmed by the highest state court. *State v. Jones,* 70 Ohio App.3d 554, 558-559, 591 N.E.2d 810(2nd Dist. 1990)

{¶23} On further appeal, the United States Supreme Court entered a reversal. Chief Justice Burger delivered the opinion for a unanimous court and stated:

The flaw in the State's case is that none of the circumstances preceding the officers' detention of appellant justified a reasonable suspicion that he was involved in criminal conduct. Officer Venegas testified at appellant's trial that the situation in the alley 'looked suspicious,' but he was unable to point to any facts supporting that conclusion. There is no indication in the record that it was unusual for people to be in the alley. *The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct.* In short, the appellant's activity was no different from the activity of other pedestrians in that neighborhood. When pressed, Officer Venegas acknowledged that the only reason he stopped appellant was to ascertain his identity. The record suggests an understandable desire to assert a police presence; however, that purpose does not negate Fourth Amendment guarantees.

In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference. The Texas statute under which appellant was stopped and required to identify himself is designed to advance a weighty social objective in large metropolitan centers: prevention of crime. But even assuming that purpose is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it. When

such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits. *See Delaware v. Prouse, supra,* at 661, 99 S.Ct. at 1400 [59 L.Ed.2d, at 672].

The application of Tex.Penal Code Ann., Tit. 8, § 38.02 (1974), to detain appellant and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe appellant was engaged or had engaged in criminal conduct. Accordingly, appellant may not be punished for refusing to identify himself, and the conviction is Reversed."

443 U.S. at 51–53, 99 S.Ct. at 2641, 61 L.Ed.2d at 362–363.

**{¶24}** Under any objective view of the evidence, the conduct of Officer Miller resulted in a detention or seizure of Romacko. Officer Miller simply observed Romacko leave a home where two drug overdoses had occurred two weeks prior in time, and walk down the street in the early afternoon. No testimony was presented that it was unusual for citizens to be walking at this time of day in this particular location. Officer Miller was unable to point to any "furtive" behavior on the part of the Romacko. A search of the trashcan Officer Miller had testified to did not reveal any evidence. Officer Miller's use of language and tone of voice as revealed from the body camera footage indicated that compliance with his requests might be compelled.

**{¶25}** In the case at bar, the absence of any basis for suspecting Romacko of misconduct, the balance between the public interest and Romacko's right to personal security and privacy tilts in favor of freedom from police interference. There is nothing more than an inchoate hunch that Romacko had violated or was about to violate the law

when the officer requested that she speak to him and to produce her identification. If police officers may approach citizens under circumstances shown in this case, it means that the police may at any time and any place for any reason or no reason whatsoever stop citizens and asked what they are doing and whom they are. Allowing police officer's to require people to show their identification absent a reasonable basis to do so serves no legitimate police function; allowing police officers to require people to show their identification when the officers have shown a reasonable basis for the request does. By requiring officers to show a reasonable basis to support the conduct, the constitutional rights of individuals are preserved and legitimate police function is not impeded. *State v. Daniel,* 12 S.W.2d 420, 431 (Tenn. 2000)(Byer, Special Justice, concurring in part, dissenting in part).

{¶26} In the case at bar, Officer Miller was unable to point to *any facts* supporting his conclusion that the situation on the public street in broad daylight looked suspicious. Thus this case presents us with a classic example of the "unparticularized suspicion or hunch" warned against in *Terry.*

{¶27} Appellant's sole assignment of error is overruled.

{¶28} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Gwin, P.J.,

Wise, J., and

Delaney, J., concur